**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 17-50070**
_____


**UNITED STATES OF AMERICA,**
**Plaintiff-Appellee,**


**v.**


**MARIA ISABEL MOLINA-ISIDORO,**
**Defendant-Appellant.**
_____


**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**
_____


**INITIAL BRIEF OF APPELLANT**
**CRIMINAL APPEAL**
_____


**LOUIS ELIAS LOPEZ, JR.**
**CJA APPOINTED COUNSEL**

**By: _____**
**Louis Elias Lopez, Jr.**
**416 N. Stanton, Street, #400**
**El Paso, Texas 79901**
**915.543.9800 (Tel)**
**915.543.9804 (Fax)**
**Texas State Bar No. 00787923**
**Attorney for Appellant/Defendant**

# **CERTIFICATE OF INTERESTED PERSONS**

I certify that the following individuals may have an interest in the outcome of this case.  I make these representations in order that the members of this Court may evaluate possible disqualifications or recusal.

District Judge:                              Honorable Judge Philip R. Martinez

Appellant:                                   Maria Isabel Molina-Isidoro

CJA Appointed Counsel:                  Louis Elias Lopez, Jr. (Trial)(Appeal)

United States Attorney for
The Western District of Texas:           Richard L. Durbin, Jr.

Assistant U.S. Attorney for
The Western District of Texas:            Robert J. White (Trial)
                                            Joseph H. Gay Jr. (Appeal)

## **REQUEST FOR ORAL ARGUMENT**

The present case involves a question of first impression meriting argument: whether the protection afforded by *Riley v. California* against warrantless searches of cell phones extends to searches conducted by law enforcement at a port of entry or is permissible under the search incident to arrest doctrine.   Given the issue, as well as the large number of *amici* who joined this appeal, oral argument would assist the Court in answering this question; therefore, oral argument is requested.

# **TABLE OF CONTENTS**

PAGE CERTIFICATE OF INTERESTED PERSONS ................................. i

STATEMENT REGARDING ORAL ARGUMENT ................................. ii

TABLE OF AUTHORITIES .......................................................... iv

STATEMENT OF JURISDICTION ............................................... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ........................... 2

STATEMENT OF THE CASE .................................................... 3

    I.     Facts and Proceedings Below...................................... 3

    II.    Summary of the Argument........................................ 7

ARGUMENT AND AUTHORITIES.............................................. 9

    I.   The District Court erred by denying the appellant's motion to suppress evidence obtained from the warrantless search of her cell phone by law enforcement officers subsequent to her detention at a United States of America Point of Entry ................. 9

       a.  The search incident to arrest doctrine does not extend to allow the warrantless search of a person's cell phone after the person is detained and not free to leave ............................ 11

       b. The border search doctrine does not extend to allow the warrantless search of a person's cell phone at a Port of Entry by law enforcement officials ........................................ 15

CONCLUSION............................................................. 19

CERTIFICATE OF SERVICE ................................................... 20

CERTIFICATE OF COMPLIANCE............................................ 21

# TABLE OF CITATIONS

Cases

*Brigham City v. Stuart*,
  547 U.S. 398, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006) ......................................11
*Johnson v. United States*,
  333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948).....................................................12
*Katz v. United States*,
  389 U.S. 347 (1967)................................................................................................9
*Kentucky v. King*,
  563 U.S. 542, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011) ......................................12
*Maryland v. King*,
  569 U.S. ——, 133 S.Ct. 1958, 186 L.Ed.2d 1 (2013) ................................. 13, 14
*Riley v. California*,
  134 S.Ct. 2473, 189 L.Ed.2d 430, 82 USLW 4558 (2014) .......................... passim
*United States v. Caballero*,
  2016 WL 1546731 (2016)............................................................................... 15, 16
*United States v. Chadwick*,
  433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977)................................... 12, 13, 14
*United States v. Cotterman*,
  709 F.3d 952 (9th Cir. 2013) ........................................................................ 14, 15
*United States v. Flores–Montano*,
  (541 U.S. 149 (2004) ............................................................................... 14, 15, 16
*United States v. Molina-Isidoro*,
  --- F.Supp.3d ----, 2016 WL 8138926
  (W.D. Texas, El Paso - October 7, 2016) ..............................................................6
*United States v. Pack*,
  612 F.3d 341 (5th Cir. 2010) ..................................................................................8
*United States v. Robinson*,
  414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) ............................................12
*United States v. Robinson*,
  741 F.3d 588 (5th Cir. 2014) ..................................................................................8
*United States v. Zuniga*,
  860 F.3d 276 (5th Cir. 2017) ..................................................................................8

*Vernonia School Dist. 47J v. Acton*,
   515 U.S. 646, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995) .......................................11

## Statutes

18 U.S.C. § 3231 ....................................................................................... vii
18 U.S.C. §3742....................................................................................... vii
21 U.S.C. § 841 (A)(1) and 846............................................................................1
28 U.S.C. §1291 ...................................................................................... vii

## Rules

Fed. R. App. P. 4.................................................................................... vii
5th Cir. R. 32.2.7.................................................................................. 19

## SUBJECT MATTER AND APPELLATE JURISDICTION

**1. Subject Matter Jurisdiction in the District Court.** This case arose from the prosecution of an offense against the laws of the United States of America. The District Court had jurisdiction of this case under Title 18 U.S.C. § 3231.

**2. Jurisdiction in the Court of Appeals.** This is a direct appeal from a final decision of the United States District Court for the Western District of Texas, El Paso Division, entering judgment of conviction and imposing a criminal sentence. This Court has jurisdiction of the appeal under Title 28 U.S.C. §1291 and Title 18 U.S.C. §3742.

The District Court entered written judgment imposing a 60-month term of imprisonment on January 18, 2017[1]; and Appellant filed her notice of appeal January 26, 2017, which complies with Fed. R. App. P. 4.[2]

---

[1]  ROA.124

[2]  ROA.132

## STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

I.    The District Court erred by denying the appellant's motion to suppress evidence obtained from the warrantless search of her cell phone by law enforcement even if the search occurred at a Point of Entry and she was detained and under arrest at the time of the search.

## STATEMENT OF THE CASE

### I. Facts and Proceedings Below

#### A. The offense

On August 10, 2016, a grand jury in the Western District of Texas indicted the Appellant, MS. MARIA ISABEL MOLINA-ISIDORO (herein referred to as MS. MOLINA), with violating Title 21 U.S.C. § 841 (A)(1) and 846 by knowingly and intentionally possessing, with the intent to distribute, a detectable amount of methamphetamine; and knowingly and intentionally import a detectable amount of methamphetamine.[3]

#### B. The Stipulated Facts[4]

On July 12, 2016, Ms. Molina attempted to enter the United States from Mexico on foot, using a pedestrian lane at the Bridge of the Americas Port of Entry in El Paso, Texas.[5]   Ms. Molina is a resident, citizen, and national of Mexico.[6]   At the primary inspection lane, Ms. Molina placed her suitcase onto an x-ray machine for inspection.[7]   Customs and Border Protection ("CBP") Officer Laura Ortega

---

[3] ROA.124
[4] Because there was no dispute regarding the facts of the case, the parties stipulated to the facts both for the Motion to Suppress and the Bench Trial.
[5] ROA.61-63, 95
[6] ROA.61-63, 95
[7] ROA.61-63, 95

performed an x-ray scan of the suitcase and detected anomalies.[8]  Ms. Molina's

suitcase was selected for inspection and CBP Officer William Long removed the

suitcase from the belt and began to question Ms. Molina .[9]  Ms. Molina claimed

ownership of the suitcase and unlocked it for inspection, moreover, when asked if

she had anything to declare, Ms. Molina responded in the negative, and stated she

only had clothing in the suitcase. [10] Ms. Molina was referred to a secondary

inspection area, where CBP Officer Homero Vega questioned Ms. Molina about her

travel.[11]  Ms. Molina stated she was coming from her brother's house in Juarez,

Mexico.[12]  Ms. Molina stated she delivered clothing that she had purchased for her

brother to sell in Juarez, Mexico.[13]  Ms. Molina claimed ownership of the suitcase

and stated she had purchased it in Tijuana, Mexico.[14]  Ms. Molina stated she had

crossed with the suitcase on multiple occasions, with no problems.[15]  Finally, Ms.

Molina stated she flew to El Paso, TX, on July 12, and her plan was to cross back

into the United States and fly back to Tijuana, Mexico, because it was "better and

easier to fly in the United States." [16]  CBP Officer Long opened Ms. Molina's

---

[8]  ROA.61-63, 95
[9]  ROA.61-63, 95
[10]  ROA.61-63, 95
[11]  ROA.61-63, 95
[12]  ROA.61-63, 95
[13]  ROA.61-63, 95
[14]  ROA.61-63, 95
[15]  ROA.61-63, 95
[16]  ROA.61-63, 95

suitcase and noticed modifications.[17]   Ms. Molina's suitcase was re-scanned

through the x-ray, and the anomaly was located covered by electrical tape.[18]   CBP

Officer Long discovered a hidden compartment, and extracted a white crystal

substance that tested positive for the presence of methamphetamin.[19]   Additionally,

a CBP Canine enforcement officer utilized a narcotics detecting dog, which alerted

to a narcotic odor emitting from the suitcase.[20] The weight of the methamphetamine

was approximately 4.32 kilograms.[21]

　　　After discovering the methamphetamine, CBP Officers contacted Special

Agents from the Department of Homeland Security.[22]   Special Agents Oscar Flores

and Jesus De Alba responded to the Port of Entry.[23]   After the agents advised Ms.

Molina of her Miranda rights, Ms. Molina affirmatively waived her rights and agreed

to give the agents a statement without the benefit of counsel.[24]   Ms. Molina told the

agents the suitcase belonged to her, and that she had no explanation for how drugs

got into the suitcase.[25]   Ms. Molina stated there was no way someone could have

---

[17]  ROA.61-63, 95
[18]  ROA.61-63, 95
[19]  ROA.61-63, 95
[20]  ROA.61-63, 95
[21]  ROA.61-63, 95
[22]  ROA.61-63, 95
[23]  ROA.61-63, 95
[24]  ROA.61-63, 95
[25]  ROA.61-63, 95

loaded the drugs into her suitcase without her knowledge.[26]    Ms. Molina stated she

flew into El Paso from San Diego and immediately took a taxi to Juarez to visit her

brother.[27]    However, she could not provide the address in Mexico where her brother

lived.[28]    Ms. Molina stated she did not see her brother because he knew she was

coming, and that she merely needed to drop off clothing to his residence.[29]    Ms.

Molina stated she was returning to El Paso because she was intending to fly back to

Tijuana, Mexico, as she had to be at work on July 13, 2016, at 5:00 A.M.[30]    Ms.

Molina advised she had not purchased tickets for this flight yet.[31]    Ms. Molina stated

she spent approximately 40 minutes total in Mexico.[32]    Agents then confronted Ms.

Molina about her travel plans and work schedule.[33]    Specifically, Agents asked Ms.

Molina why she needed to pack additional personal clothing if she only intended to

stay in Mexico for 40 minutes and immediately fly back home for work.[34]    Ms.

Molina did not respond.[35]    Agents asked Ms. Molina to try and explain her story

---

[26]  ROA.61-63, 95
[27]  ROA.61-63, 95
[28]  ROA.61-63, 95
[29]  ROA.61-63, 95
[30]  ROA.61-63, 95
[31]  ROA.61-63, 95
[32]  ROA.61-63, 95
[33]  ROA.61-63, 95
[34]  ROA.61-63, 95
[35]  ROA.61-63, 95

because to them it did not make sense, at which point Ms. Molina terminated the interview by requesting to speak with an attorney.[36]

At this point, Agents conducted a review of her phone, viewing the Uber and WhatsApp applications.[37]  Agents did not ask for, nor receive consent from Ms. Molina to search her phone.[38]  When viewing the WhatsApp application, Agents observed, recorded, and translated the following exchange:

> MOLINA advised RAUL that she was headed to El Paso, and requested RAUL to send her the information for the Uber. MOLINA advises RAUL that she had arrived in El Paso. RAUL responded that he sent her the information for the Uber. RAUL sent a picture of a credit card, front and back, and told MOLINA to use that credit card information to pay for Uber. RAUL sent information regarding a hotel located in Juarez, Mexico.  RAUL directed MOLINA to Hotel Suites in Colonia Playas, Room #10, and advised MOLINA that the stuff is located there.  MOLINA advised RAUL that she arrived at the room but no one was there.  RAUL stated he will get a hold of them. MOLINA then responded that the guy was asleep and he opened the door.  RAUL sent another picture of a Southwest Airlines flight itinerary.  The itinerary listed MOLINA as the passenger of a flight departing El Paso at 5:15 P.M. with a destination of Ft. Lauderdale, Florida.  MOLINA advised RAUL that she got the stuff and was headed back to El Paso.[39]

---

[36]  ROA.61-63, 95
[37]  ROA.61-63, 95
[38]  ROA.61-63, 95
[39]  ROA.61-63, 95

Ms. Molina was arrested, and the suspected methamphetamine was sent to a laboratory for examination.[40]   The parties stipulated to the laboratory results, which confirmed the suspected substance was methamphetamine.

## C. The Motion to Suppress

Ms. Molina subsequently filed a motion to suppress the text messages found in her cell phone as a result of law enforcement conducting a warrantless search of her cell phone after she was, for all practical purposes, under arrest for possessing and importing with the intent to distribute methamphetamine as she attempted to enter the United States of America at the El Paso Point of Entry located in El Paso, TX.[41]   The government filed their response.[42]   Since the parties did not have any disputes regarding the facts of this case, the parties advised the District Court that an evidentiary hearing was not necessary and that the court could make its decision based on the motions and memorandums filed in support and against. The court subsequently issued its order denying Ms. Molina's motion to suppress.[43]

## D. The Bench Trial

---

[40]  ROA.61-63, 95

[41]  ROA.20

[42]  ROA.20

[43]  ROA.66; *See United States v. Molina-Isidoro*, --- F.Supp.3d ----, 2016 WL 8138926 (W.D. Texas, El Paso - October 7, 2016).

The parties then agreed to waive their right to a jury trial and instead, proceed to a bench trial.[44]   The parties presented the stipulation of facts to the District Court, with a clear understanding that Ms. Molina was not waiving any of her suppression issues raised previously in her motion to suppress.[45]   As a result, the District Court found Ms. Molina guilty.[46]

At Ms. Molina's sentencing, the District Court found that her adjusted offense level, pursuant to the corresponding United States Sentencing Guidelines (U.S.S.G), was a level 27 with a Criminal History Category of I.[47]   Ms. Molina's the range of punishment was 70 to 87 months.[48]   However, the District Court found that Ms. Molina's case fell outside of the heartland of criminal cases and sentenced Ms. Molina to 60 months on both counts to run concurrent.[49]

## II.    Summary of Argument

The District Court erred by denying the Ms. Molina's motion to suppress the cell phone evidence obtained from the warrantless search of her cell phone subsequent to her attempted entry and arrest at the United States of America El Paso del Norte Point of Entry in El Paso, TX.   Specifically, the search incident to arrest

---

[44]  ROA.135
[45]  ROA.135
[46]  ROA.150
[47]  ROA.159
[48]  ROA.159
[49]  ROA.169

doctrine does extend to warrantless searches of a cell phone; nor does the border search doctrine permit law enforcement's warrantless search of a cell phone even when the search occurs at a Port of Entry.

## ARGUMENT AND AUTHORITIES

**I. The District Court erred by denying the appellant's motion to suppress evidence seized from the warrantless search of her cell phone subsequent to her attempted entry and arrest at the United States of America El Paso del Norte Point of Entry in El Paso, TX**

### A. Standard of Review

When assessing a denial of a motion to suppress evidence, the Court reviews "factual findings for clear error and the ultimate constitutionality of law enforcement action de novo." *United States v. Zuniga*, 860 F.3d 276, 280–81 (5th Cir. 2017); *United States v. Robinson*, 741 F.3d 588, 594 (5th Cir. 2014). The evidence is viewed in the light most favorable to the prevailing party, which in this case is the Government. *United States v. Zuniga*, 860 F.3d at 281; s*ee also United States v. Pack*, 612 F.3d 341, 347 (5th Cir. 2010).

In this case there is no question concerning the factual findings and therefore, the Court does not need to make a clear error determination about the facts. Because this is truly a constitutionality of law question, the proper standard for this review is a *de novo* review of the applicable law. *Id.*

### B. Discussion

Any Fourth Amendment analysis of a warrantless search or arrest, such as the instant one, proceeds from the presumption that is unreasonable as a matter of law unless and remains that way until the Government can sustain its burden of showing

that the warrantless search fits within one of the recognized exceptions to the warrant requirement. *Katz v. United States*, 389 U.S. 347 (1967).   In this case, it is stipulated that Ms. Molina's person was "seized" for purposes of the Fourth Amendment.[50]   In view of all the circumstances surrounding the incident, a reasonable person would have believed that Ms. Molina was not free to leave from the moment the officers interfered with her freedom of movement by holding her to await HSI agents after the narcotics were found.[51]   And, it is stipulated that the evidence obtained from Ms. Molina's cell phone was without a search warrant while Ms. Molina was detained by United States Customs Agents.[52]

The issue is whether the warrantless search of Ms. Molina's cell phone at a border port of entry, while she was detained for possession methamphetamine, violates the Fourth Amendment.   Heading in one direction is the Supreme Court's bright line rule established in *Riley v. California,* 134 S.Ct. 2473, 189 L.Ed.2d 430, 82 USLW 4558 (2014), that law enforcement officers must obtain a warrant to search a cell phone incident to an arrest.   Heading in the other direction is the notion that the warrantless search of the cell phone is permissible if (a) the search occurs incident to an arrest or; (b) the search a cell phone is permissible if the search occurs at a border port of entry.

---

[50]  ROA.61-63, 95
[51]  ROA.61-63, 95
[52]  ROA.61-63, 95

### a. The search incident to arrest doctrine does not extend to allow the warrantless search of a person's cell phone after the person is detained and not free to leave

In *Riley*, a police officer stopped petitioner David Riley for driving with expired registration tags. *Riley v. California*, 134 S.Ct. at 2480. During the stop, the officer also learned that Riley's license had been suspended. *Id.* The officer impounded Riley's car, pursuant to department policy, and another officer conducted an inventory search of the car. *Id.* The police then arrested Riley for possession of concealed and loaded firearms when that search turned up two handguns under the car's hood. *Id.* An officer also searched Riley incident to the arrest and found items associated with the "Bloods" street gang. *Id.* The officer also seized a cell phone from Riley's pants pocket. *Id.* According to Riley's uncontradicted assertion, the phone was a "smart phone," a cell phone with a broad range of other functions based on advanced computing capability, large storage capacity, and Internet connectivity. *Id.* The officer accessed information on the phone and noticed that some words (presumably in text messages or a contacts list) were preceded by the letters "CK"— a label that, he believed, stood for "Crip Killers," a slang term for members of the Bloods gang. *Id.* At the police station about two hours after the arrest, a detective specializing in gangs further examined the contents of the phone. *Id.* The detective testified that he "went through" Riley's phone "looking for evidence, because ...

gang members will often video themselves with guns or take pictures of themselves with the guns." *Id.* at 50.   Although there was "a lot of stuff" on the phone, particular files that "caught [the detective's] eye" included videos of young men sparring while someone yelled encouragement using the moniker "Blood." *Id*.   Riley was ultimately charged, in connection with that earlier shooting, with firing at an occupied vehicle, assault with a semiautomatic firearm, and attempted murder. *Id*. The State alleged that Riley had committed those crimes for the benefit of a criminal street gang, an aggravating factor that carries an enhanced sentence. Riley moved to suppress all evidence that the police had obtained from his cell phone. The trial court denied the motion and Riley was convicted.

Long standing precedent holds that "the ultimate touchstone of the Fourth Amendment is 'reasonableness.' " *Riley* at 2481; *see also Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006). The Court's cases have determined that "[w]here a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, ... reasonableness generally requires the obtaining of a judicial warrant." *Riley* at 2481; *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 653, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995). Such a warrant ensures that the inferences to support a search are "drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often-competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct.

367, 92 L.Ed. 436 (1948). In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement. *See Kentucky v. King*, 563 U.S. 542, 131 S.Ct. 1849, 1856–1857, 179 L.Ed.2d 865 (2011). The Court concludes that the search of a person is reasonable even though there was no concern about the loss of evidence, and the arresting officer has no specific concern that the person might be armed. *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). In doing so, the Court does not draw a line between a search the person and a further examination of the items found during that search. *Id.* A few years later, the Court held that this exception was limited to "personal property ... immediately associated with the person of the arrestee." *United States v. Chadwick*, 433 U.S. 1, 15, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (200–pound, locked footlocker could not be searched incident to arrest), abrogated on other grounds by *California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991).

But while the Court holds that inspecting the contents of an arrestee's pockets works no substantial additional intrusion on privacy beyond the arrest itself and may make sense as applied to physical items, a more substantial privacy interest is at stake when digital data is involved. *Riley*, at 2483. And the *Riley* Court reiterated the idea that not every search "is acceptable solely because a person is in custody." *Maryland v. King*, 569 U.S. ——, ——, 133 S.Ct. 1958, 1979, 186 L.Ed.2d 1 (2013).

The *Riley* court found that "cell phones differ in both a quantitative and a qualitative sense from other objects that might be carried on an arrestee's person. *Riley*, at 2483. Notably, modern cell phones have an immense storage capacity. *Id*. at 2489. Before cell phones, the Court stated, "a search of a person was limited by physical realities and generally constituted only a narrow intrusion on privacy." *Id*. And now, the Court pointed out, "cell phones can store millions of pages of text, thousands of pictures, or hundreds of videos." *Id*. Thus, the Court found that "this aspect of the phone has several interrelated privacy consequences." *Id*.

Also, the Court emphasized that the storage capacity of cell phones creates several interrelated consequences for privacy. *Id*. First, the Court found that "a cell phone collects in one place many distinct types of information such as "an address, a note, a prescription, a bank statement, a video—that reveal much more in combination than any isolated record." *Id*. Second, the Court stated that "a cell phone's capacity allows even just one type of information to convey far more than previously possible." *Id*. So one could imagine, the Court contemplated, that the "sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions; the same cannot be said of a photograph or two of loved ones tucked into a wallet." *Id*. And third, "the data on a phone can date back to the purchase of the phone, or even earlier." *Id*. A person might carry in his pocket a slip of paper reminding him to call Mr. Jones; he would

not carry a record of all his communications with Mr. Jones for the past several months, as would routinely be kept on a phone. *Id.*

Additionally, an element of pervasiveness characterizes cell phones but not physical records. The Court observed that a "decade ago officers might have occasionally stumbled across a highly personal item such as a diary, but today many of the more than 90% of American adults who own cell phones keep on their person a digital record of nearly every aspect of their lives." *Id*. at 2490.

Thus, a straight-out application of *Riley* excludes the usage of the text messages obtained from Ms. Molina's phone because the search incident to an arrest doctrine is not applicable.

Therefore, based on the aforementioned holding, Ms. Molina requests that the Court suppress the cell phone evidence obtained from the warrantless search of her cell phone; Agent Flores' opinions and impressions formed as a result of reading the text messages obtained from the phone; and any evidence derived as a result of the search of the phone.

## a. The border search doctrine does not permit law enforcement's warrantless search of a cell phone at a Port of Entry.

The Government remonstrates that *Riley* has no application at the border and that the search was permissible under the long-standing border search doctrine described in *United States v. Flores–Montano*, (541 U.S. 149, 152 (2004)). The

border search exception describes an exception to the general Fourth Amendment principles. *Id.* It is the notion that the government may search without a warrant anyone and anything coming across its border to protect its national sovereignty. *United States v. Cotterman*, 709 F.3d 952 (9th Cir. 2013) (the broad contours of the scope of searches at our international borders are rooted in "the long-standing right of the sovereign to protect itself by stopping and examining persons and property crossing into this country.") Thus, border searches form "a narrow exception to the Fourth Amendment prohibition against warrantless searches without probable cause.'"   In *Cotterman*, Mr. Cotterman attempted to gain entry into the United States and was permitted to pass into the country. *Id*. However, his laptops and a camera were detained and searched. *Id*.  Interestly, Mr. Cotterman was able to flee to Australia two days later.   *Cotterman*, supra.  Addressing the warrantless search of Mr. Cotterman's camera and laptop, the Court held that the search was permissible. *Id*.

However, the border exception doctrine is not monolithic. *See United States v. Caballero*, 2016 WL 1546731 (2016). In *Caballero*, a distinction has been articulated by the court even though the defendant in *Caballero*, like *Cotterman*, was entering the United States at the border, the difference between the two cases is that Caballero was arrested and Cotterman was not. *Id*.   As such, as stated in opinion's dicta, the District Court found that "[o]nce an international traveler is

placed under arrest at the border, the context changes." *Id*.   While, "[t]he government's interest in preventing the entry of unwanted persons and effects is at its zenith at the international border" (Flores–Montano, supra), "once unwanted drugs have been discovered and a person arrested, it can be said that the Government has achieved its goal of discovery."  *Id*.   In fact, the District Court went on to say that once the stopping and examining of a person and property crossing into this country has taken place, (Flores–Montano, supra), and illicit narcotics have been discovered, reasonable suspicion has jelled into probable cause. *Id*.   Thus, any goal the government might have of proceeding expeditiously to avoid delaying innocent travelers, evaporates and there is no more need for agents to work expeditiously to return the digital device to the traveler so that he or she may be on their way. *Id*. Thus, agents may take their time to obtain a search warrant. *Id*.

In our case, Ms. Molina's situation mirrors Caballero's in that both were arrested or under arrest at the time their phones were searched.   As such, the exigency to search the phone evaporates once the person is in custody. *Id*.   And unlike the 9th Circuit, this court is not bound by precedents contesting the search of the phone at the border since the *Riley* opinion.

Therefore, Ms. Molina requests that the court suppress the fruits obtained from the warrantless search of the cell phone; Agent Flores' opinions and

17

impressions formed as a result of reading the text messages obtained from the phone; and any evidence derived as a result of the search of the phone.

## CONCLUSION

Appellant prays that this Court: the vacate her conviction and set aside her sentences and remand this case back to the District Court with instructions to grant Ms. Molina's Motion to Suppress because there was no warrant to search the cell phone; all exigent circumstances ceased once the drugs were found; and Ms. Molina was detained awaiting the arrival of SA Flores of HIS.   Thus, the text messages, as well as SA Flores' observations and impressions resulting from the discovery of the phone messages, should be excluded pursuant to *Riley v. California*, supra.

Respectfully submitted,

LOUIS ELIAS LOPEZ, JR.
CJA APPOINTED COUNSEL

By: /s Louis Elias Lopez, Jr.
416 N. Stanton, Street, #400
El Paso, Texas 79901
915.543.9800 (Tel)
915.543.9804 (Fax)
Texas State Bar No. 00787923
Attorney for Appellant

## **CERTIFICATE OF SERVICE**

On the 21st day of August 2017, the undersigned electronically filed the foregoing document with the United States Court of Appeals, Fifth Circuit, using the electronic case filing (ECF) system of the court. The ECF system will send a "Notice of Electronic Filing" to Joseph H. Gay, the attorney of record for the United States of America, who has consented to acceptance the Notice as service of this document by electronic means, and Maria Isabela Molina-Isidoro, 75874-380, FCI Aliceville, Federal Correctional Institution, P.O. Box 4000, Aliceville, Al, 35442.                    /s Louis Elias Lopez Jr.

## **CERTIFICATE OF COMPLIANCE**

Pursuant to 5th Cir. R. 32.2.7(c), the undersigned certifies this brief complies with the type-volume limitations of 5th Cir. R. 32.2.7(b).

1. Exclusive of the exempted portion in 5th Cir. R. 32.2.7(b)(3), this brief contains well fewer than 13,000 words.

2. This brief has been prepared in proportionally spaced typeface using MS Word in Times New Roman typeface and 14-point font size.

3. The undersigned understands a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in 5th Cir. R. 32.2.7, may result in the Court's striking the brief and imposing sanctions against the person signing the brief.

/s Louis Elias Lopez Jr.